Filed 1/18/23  Perham v. Salazar CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES PERHAM, as Assignee, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JONATHAN SALAZAR,<br><br>Defendant and Respondent. | D079713<br><br><br>(Super. Ct. No. 37-2019-00059072-CU-BC-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Reversed and remanded with directions.

Landay Roberts, John K. Landay, and Waddy Stephenson for Plaintiff and Appellant.

Webb Law Group, Lenden F. Webb, and Christopher E. Nichols for Defendant and Respondent.


James Perham, the chief executive officer of and assignee of a default judgment obtained by Extreme Transportation, Inc. (ETI) against its former contractor, Jonathan Salazar, appeals from a postjudgment order granting Salazar's motion to set aside the judgment on grounds of ineffective service of

process. Perham asserts that ETI's service of its summons and complaint was effective, and therefore the trial court did not have authority to set aside the default judgment as void. As we shall explain, we agree with Perham that ETI's substitute service on Salazar was effective and, therefore, the trial court's order setting aside the judgment was in error. Accordingly, we reverse the order and remand the matter to the trial court with directions to enter an order denying Salazar's motion and to re-enter the default judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 2019, ETI filed its complaint against Salazar for breach of an Independent Contractor Service Agreement (Agreement) they entered the prior year. Under the Agreement, Salazar provided ETI with freight transportation services. In the Agreement, Salazar listed his address as 14031 Woodland Drive, Fontana, California. ETI's complaint alleged that Salazar breached the Agreement by failing to reimburse ETI for fuel costs and by damaging property he was responsible for transporting. According to the complaint, Salazar stopped providing services to and responding to email messages from ETI on July 8, 2019.

On three consecutive days, November 8, 9, and 10, 2019, a registered process server attempted to personally serve the summons and complaint on Salazar at the Woodland Drive address, the only address for him known to ETI. The following day, November 11, 2019, to effect substitute service under Code of Civil Procedure[1] section 415.20, subdivision (b), the process server left a copy of the summons and complaint with Salazar's sister, Yesemia Salazar, at the Woodland Drive address and mailed copies of the documents

---

[1]    Subsequent undesignated statutory references are to the Code of Civil Procedure.

2

to the same address. In a declaration submitted in connection with ETI's opposition to Salazar's subsequent motion to set aside the default judgment, the process server stated that Yesemia confirmed to him that Salazar resided at the address and that he also received mail there.

On January 8, 2020, ETI submitted a request for entry of default, which the court clerk entered that day. Default judgment was eventually entered by the court clerk on August 20, 2020 for $61,332.46. Over a year later, on September 13, 2021, a bank levy was executed on Salazar's personal bank account by the Los Angeles Sheriff. That day, Salazar saw that his bank balance was $0. He contacted the bank and was informed that he was subject to a levy.

As a result, on September 22, 2021, Salazar filed a claim of exemption with the Los Angeles Sheriff. After receiving the claim of exemption, Perham responded by filing a motion in the trial court for an order to determine the claim. Salazar then filed an ex parte application to shorten time to file a motion to stay execution of the judgment and to set aside the default judgment as void under section 473, subdivision (d). In his motion, Salazar asserted that service of the complaint was ineffective because he did not live at the Woodlands Drive address at the time of the substituted service.

Perham opposed the application, arguing that a stay of enforcement was not appropriate because Salazar could not show a likelihood of prevailing since he was properly served with the summons and complaint. Perham pointed to Salazar's address on the Agreement and other evidence suggesting Salazar received mail at Woodland Drive. Perham also asked the trial court to take judicial notice of documents filed by Salazar with the California Secretary of State showing that Salazar formed and operated a business,

3

Jonathan's Transportation Inc., from the Woodland Drive address around the time of the substituted service.

The trial court granted the ex parte application to shorten time and set a hearing and briefing schedule on Salazar's motion to set aside the default judgment. The court also denied the request to stay enforcement of the judgment. On October 28, 2021, after a brief hearing, the court issued a minute order ruling on the motion. The court granted Perham's request for judicial notice of the documents Salazar filed with the California Secretary of State, and granted Salazar's motion to set aside the default judgment. The court also vacated the hearing on Perham's opposition to the claim of exemption of the bank levy.

Perham timely appealed from the order.

## DISCUSSION

On appeal, Perham asserts that the court's order must be reversed because ETI's substituted service on Salazar was effective and, therefore, the default judgement was not void. Salazar responds that the trial court correctly concluded that he did not reside or work at the Woodland Drive address, nor was it his usual mailing address, at the time ETI attempted substituted service. Salazar also argues that the process server's three attempts at personal service did not constitute reasonable diligence because he did not live at the Woodland Drive address. For these reasons, Salazar argues the court's order granting his motion to set aside the default judgment was correct and should be affirmed.

### I

### *Legal Standards*

"[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default

4

judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 (*Dill*).)  Pursuant to section 473, subdivision (d), the court may set aside a judgment which, although valid on its face, is void due to improper service.  (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544.)

Strict compliance with the service requirements, however, is not required.  "In deciding whether service was valid, the statutory provisions regarding service of process ' " 'should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant ….' " ' [Citation.]  Thus, substantial compliance is sufficient." (*Dill, supra*, 24 Cal.App.4th at pp. 1436–1437.)  The provisions are "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant, ' " 'and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint.' " ' " (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1392, citing *Pasadena Medi–Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778.)

"The Supreme Court's admonition to construe the process statutes liberally extends to substituted service as well as to personal service. [Citation.]  'To be constitutionally sound the form of substituted service must be "reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard … [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied.' " (*Bein v. Brechtel-Jochim Group, Inc., supra*, 6 Cal.App.4th at p. 1392.)

Section 415.20, subdivision (b) authorizes substituted service of process in lieu of personal delivery. It states, "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served … a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing."

The reference to "reasonable diligence" in section 415.20, subdivision (b) means that "an individual may be served by substituted service only after a good faith effort at personal service has first been made: the burden is on the plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the individual defendant. (§ 415.20, subd. (b); *Evartt v. Superior Court* (1979) 89 Cal.App.3d 795, 801.) Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as ' "reasonable diligence." ' " (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389.)

Where a motion to vacate is made more than six months after entry of a judgment, a trial court may grant a motion to set aside that judgment as void when it is void on its face. (*Dill, supra*, 24 Cal.App.4th at p. 1441.) " 'A

6

judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' [Citation.]" (*Ibid*.) "When a judgment by default has been entered, the judgment-roll is limited to the summons, proof of service of the summons, complaint, request for entry of default, copy of the judgment, notice of any ruling overruling a demurrer interposed by the defendant and proof of service thereof, and, if service was by publication, affidavit for publication and order directing it. (§ 670, subd. (a).) Because any defect in service must appear on the face of the judgment-roll as delimited by the documents specified in section 670, subdivision (a), our review of a trial court's order finding such a facial defect is of necessity de novo." (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440.)

"However, where a plaintiff has contested a motion to vacate a default judgment by way of affidavits or other evidence that goes beyond the judgment-roll as set forth in section 670, subdivision (a), of necessity our review goes beyond the judgment-roll. (See, e.g., *Dill*[, *supra*,] 24 Cal.App.4th at [p.] 1441 [defect in service that appears on face of judgment-roll shifts 'evidentiary burden' to plaintiff].) In determining any issues raised by such evidentiary matters, our review is governed by the familiar abuse of discretion standard. [Citation.] That standard requires we defer to factual determinations made by the trial court when the evidence is in conflict, whether the evidence consists of oral testimony or declarations." (*Ramos v. Homeward Residential, Inc., supra*, 223 Cal.App.4th at pp. 1440–1441.)

We accept the trial court's factual findings as long as they are supported by substantial evidence, i.e. evidence that is reasonable, credible, and of solid value. (See *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1182 [assessing whether substantial evidence in the record supports trial court's

7

implicit finding that summons and complaint properly served by substituted service].)  "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)  We do not reweigh evidence, reassess the credibility of witnesses, or resolve conflicts in the evidence.  (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.)  Factual findings that are not supported by any evidence, obviously, constitute an abuse of the court's discretion.

## II

### *Analysis*

In this case, inspection of the judgment-roll does not establish the default judgment was invalid.  Rather, the proofs of service show that ETI's process server served Salazar by substitute service in accordance with section 415.20, subdivision (b).  No defect in service appears on the face of the documents.[2]  Thus, to show that substitute service was ineffective, Salazar was required to present extrinsic evidence that ETI failed to meet the statutory requirements.  Specifically, Salazar had to show that ETI was not reasonably diligent in attempting personal service and that the Woodland Drive address did not qualify as any of the three proper places for service contained in section 415.20, subdivision (b), i.e. that the address was not Salazar's (1) "dwelling house" or "usual place of abode," (2) "usual place of business," or (3) "usual mailing address."

As an initial matter, and as Perham points out in his reply brief, Salazar did not argue in the trial court that ETI was not reasonably diligent in its attempts at personal service before its process server used substitute

---

[2]    Salazar also does not dispute that he had actual notice of the lawsuit prior to the default judgment.

8

service.  Rather, Salazar argued only that the address was not "his 'dwelling house, usual place of abode, usual place of business, or usual mailing address.' "  Because Salazar did not make any argument related to this issue in the trial court, Perham contends he had no opportunity to demonstrate ETI's reasonable diligence and Salazar forfeited the argument.  We agree.  (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 ["Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider."].)

However, even if we assume the argument was not forfeited, Salazar has not shown that ETI was not reasonably diligent in its attempts to personally serve him.  The undisputed evidence shows that the process server satisfied this requirement by making three attempts to personally serve Salazar at his usual mailing address before he resorted to substitute service.  (See *American Express Centurion Bank v. Zara, supra*, 199 Cal.App.4th at p. 389.)  Further, Salazar's only argument concerning this issue is that the process server was not diligent because the Woodland Drive address was not a proper place for service.  As we shall explain, we reject this argument.  Thus, Salazar's claim that ETI was not sufficiently diligent in its attempts at personal service also fails.

With respect to the issue of whether the Woodland Drive address was a proper place for service, we agree with Salazar that he did present sufficient evidence to support the trial court's implicit findings that the address was not his home or usual place of business.  Critically, however, Salazar did not present any evidence supporting his claim that Woodland Drive was not his usual mailing address.

9

As noted, in support of his motion to set aside the judgment under section 473, subdivision (d), Salazar submitted his declaration asserting that he did not reside at the Woodland Drive address at the time of the service and that he did not use the address to conduct business. The declaration, however, contains no statement concerning whether Woodland Drive was his usual mailing address. On the other hand, Perham's evidentiary submissions included the updated declaration from the process server, who stated that on November 11, 2019, Salazar's sister informed him that Salazar lived at the Woodland Drive address and, importantly, that Salazar also regularly received mail there.

Perham's evidence also included the declaration of Matthew Johnston, the managing member of JPM Recovery, LLC, a company that performs skip-tracing services. Johnston stated that he performed a records search on Salazar that revealed his most recent address was Woodland Drive, that his current driver's license showed the same address, and that a business search showed Salazar was the chief executive officer of Jonathan's Transportation Inc. and that the company's address was the Woodland Drive address. Johnston's declaration also stated that his search showed that Salazar had not filed a forwarding address for Woodland Drive with the United States Postal Service (USPS) in the prior four years. Johnston's declaration attached documents supporting each assertion.

Further, Perham asked the trial court to take judicial notice of the initial articles of incorporation and statement of information that Salazar filed with the California Secretary of State for Jonathan's Transportation Inc. in April 2018, and a subsequent statement of information Salazar filed in October 2020, indicating no change in the information filed in the 2018

10

statement of information.[3]  The original statement of information lists 14031 Woodland Drive as the address both for the corporation and for Salazar individually as the sole officer, director, and agent for the company.

To determine whether the default judgment was void based on ineffective service of process, the trial court was required to make factual findings as to whether Perham's evidence showed that substitute service at the Woodland Drive address was effective because Salazar either (1) resided there, (2) used the home as his usual place of business, or (3) used the address as his usual mailing address.  (§ 415.20, subd. (b).)  With respect to the first two categories, as stated, we agree with Salazar that he presented evidence disputing both, which could support the court's implied findings that the Woodland Drive address was not his home or usual place of business.  Salazar's declaration, attaching the lease he entered into for a residence in Eastvale, California from December 2018 through January 2020, supported his assertion that he did not reside at the Woodland Drive home at the time of service.  Likewise, Salazar's statements that his usual place of business was the trucking company he worked for in Eastvale, not the transportation company he formed in 2018, supported the finding the home was not his usual place of business.

---

[3]  The trial court granted the request "as to the existence of the documents, but not as to the truth of their contents."  Perham requests we take judicial notice of the statements of information Salazar filed with the Secretary of State in April 2018 and October 2020.  These documents are appropriate subjects for judicial notice under Evidence Code section 452, subdivisions (c) and (h).  Accordingly, the request is granted.  (See e.g., *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 37 [taking judicial notice of the records of the California Secretary of State under Evid. Code, § 452, subds. (c), (h)].)

However, Salazar presented no evidence to support his claim that the Woodland Drive address was not his usual mailing address. Instead, all of the evidence before the trial court pointed to the opposite conclusion. Specifically, Salazar's declaration contains no statement refuting the fact that it was his usual mailing address. Johnston's declaration and attachments showed that Salazar continued to use the address on his driver's license, and that Salazar had never changed his mailing address from Woodland Drive with the USPS.[4] Further, Salazar himself submitted a statement of information to the California Secretary of State in October 2020, after the default judgment was entered, representing his personal address remained at Woodland Drive. His declaration provides no refutation or explanation of this submission.

We agree with Perham that this evidence established Woodland Drive was Salazar's usual mailing address. Critically, Salazar submitted no evidence showing otherwise. (See *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 499 [rejecting defendant's claim that he was not properly served where plaintiff showed statutory requirements for service were established and defendant presented "no evidence to the contrary"]; *Neadeau v. Foster* (1982) 129 Cal.App.3d 234, 237 ["Defendant, having the clear opportunity to refute what otherwise appears to be competent evidence that

---

[4] Salazar argues that failure to change your mailing address from your parents' home cannot support a finding that that home is a child's usual mailing address because then "it would be possible to serve the children at their parent's residence in perpetuity until they formally updated their address with the postal service." We disagree. Service at a parent's home is appropriate if it is a child's usual mailing address; but this does not lead to the conclusion that such status continues in perpetuity. Rather, like any other home, a defendant can establish that a parent's home is no longer their usual mailing address by presenting evidence of that fact. Salazar made no such showing in this case.

he was served with process, has failed to do so."].)  Because there was no evidence before the trial court to support its implied finding that Salazar did not use the Woodland Drive address as his usual mailing address, the court erred by finding the default judgment void for lack of effective service.  Accordingly, we reverse the trial court's order granting Salazar's motion to set aside the default judgment.

## DISPOSITION

The order is reversed, and the matter is remanded to the trial court with directions to enter an order denying Salazar's motion to set aside the default judgment and to re-enter the default judgment.  Costs of appeal are awarded to Appellant.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

13